UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION |
| | ) | No. |
| THE BLACK & DECKER CORPORATION, | ) | |
| BLACK & DECKER, INC., BLACK & DECKER | ) | |
| (U.S.) INC., EMHART CORPORATION, and | ) | |
| EMHART, INC., | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT AND JURY DEMAND

Plaintiff, Liberty Mutual Insurance Company, makes the following allegations against defendants, The Black & Decker Corporation, Black & Decker, Inc., Black & Decker (U.S.) Inc., Emhart Corporation, and Emhart Industries, Inc., with respect to the Beacon Heights site in Connecticut (the "Beacon Heights site").

Liberty Mutual Insurance Company makes these allegations pursuant to the March 19, 2004 Order of the Court in the case styled Liberty Mutual Insurance Company v. The Black & Decker Corporation, et al., C.A. No. 96-10804-DPW, which directed the parties to restate the claims and defenses with respect to the Beacon Heights site which were originally pled in the pleadings filed in C. A. No. 96-10804 prior to March 19, 2004, and declared that the allegations, claims and defenses filed in the instant new lawsuit relate back in their entirety to the original pleadings filed in C.A. No. 96-10804.

Plaintiff, Liberty Mutual Insurance Company, for its Complaint against defendants, The Black & Decker Corporation, Black & Decker Inc., Black & Decker (U.S.) Inc., Emhart Corporation, and Emhart Industries, Inc., alleges with respect to the Beacon Heights site as follows:

## PARTIES

1.      Plaintiff, Liberty Mutual Insurance Company ("Liberty Mutual"), is a mutual insurance company organized and existing under the laws of the Commonwealth of Massachusetts, with its principal place of business at 175 Berkeley Street, Boston, Massachusetts.

2.      Defendant, The Black & Decker Corporation ("Black & Decker"), is a corporation organized pursuant to the laws of the state of Maryland.  Black & Decker is registered to do business in Massachusetts, and maintains a place of business at 12 Market Street, Brighton, Massachusetts.  Black & Decker's principal place of business is located at 701 East Joppa Road, Towson, Maryland.

3.      Defendant, Black & Decker, Inc. ("B&DI"), is a corporation organized pursuant to the laws of Delaware.  B&DI is a wholly-owned subsidiary of Black & Decker, which maintains a place of business at 12 Market Street, Brighton, Massachusetts, and has its principal place of business in Newark, Delaware.

4.      Defendant, Black & Decker (U.S.) Inc. ("B&DUS"), is a corporation organized pursuant to the laws of Maryland.  B&DUS is a wholly-owned subsidiary of Black & Decker, which maintains a place of business at 12 Market Street,

- 2 -

Brighton, Massachusetts, and has its principal place of business in Towson, Maryland.

5.    Defendant, Emhart Corporation ("Emhart"), is a corporation organized pursuant to the laws of Virginia. Emhart is a wholly-owned subsidiary of defendant B&DI, which is a wholly-owned subsidiary of defendant Black & Decker, which maintains a place of business at 12 Market Street, Brighton, Massachusetts, and has its principal place of business in Towson, Maryland. Emhart is the parent corporation of defendant Emhart Industries, Inc.

6.    Defendant, Emhart Industries, Inc. ("Emhart Industries"), is a corporation organized pursuant to the laws of Connecticut. Emhart Industries is a wholly-owned subsidiary of defendant Emhart, which in turn is a wholly-owned subsidiary of defendant Black & Decker, which maintains a place of business at 12 Market Street, Brighton, Massachusetts, and has its principal place of business in Towson, Maryland.

7.    During various time periods relevant to the subject matter of this action, defendants have owned or controlled the following subsidiaries and/or divisions, and/or, on information and belief, have succeeded to their liabilities:

a.    <u>USM Corporation</u>. USM Corporation ("USM"), formerly known as the United Shoe Machinery Corporation, was acquired by an Emhart subsidiary in 1976, and was merged into defendant Emhart Industries in 1987. From the early 1900's until 1976, USM maintained its principal place of business in Boston, Massachusetts.

- 3 -

b.    <u>Bailey Division of USM Corporation</u>.  USM manufactured automotive products through its Bailey Division in Amesbury, Massachusetts and Seabrook, New Hampshire during the period from at least 1970 to 1982.  The USM Bailey Division also maintained a plant in Hopkinsville, Kentucky, during said period.  Pursuant to a Purchase & Sale Agreement dated September 3, 1982, USM sold the business and assets of the Bailey Division to the Bailey Corporation.  USM retained certain liabilities under the Purchase & Sale Agreement pertaining to its Bailey Division, and Emhart Industries succeeded to those liabilities.

c.    <u>Bostik Division of USM Corporation</u>.  During the period from at least 1969 to 1989, the Bostik Division of USM engaged (under various names, such as Bostik, Upco, Girder, Crown Metro Inc., and Finch Paint & Chemical) in the manufacture of adhesives, sealants, coatings, and other specialty chemical products.  In October 1989 B&DI sold the assets and business of the Bostik Division, but retained certain liabilities.

d.    <u>J. C. Rhodes & Co. Division of USM Corporation</u>.  During the period 1917 to May 25, 1956, J. C. Rhodes & Co. was a division of USM, manufacturing metal shoe eyelets in New Bedford, Massachusetts.  USM sold the assets and business of its J. C. Rhodes & Co. Division to Plymouth Cordage Company in 1956.  Plymouth Cordage Company merged with the company now known as Emhart Industries in 1966, and in 1975, the company now known as Emhart Industries sold the business and assets of the J. C. Rhodes Division of Emhart Industries to PCI Group, Inc., but retained certain liabilities.

- 4 -

e.    <u>Farrel Machinery Group</u>.  The Farrel Company, also known as Farrel Corporation, became the Farrel Company Division of USM on December 31, 1968.  The Farrel Company Division of USM manufactured machinery at plants located in Connecticut, New York, Georgia, Illinois, Michigan, and Texas.  Other divisions in the machinery group included the William DeBrule Division, Red Sherman Division, Lombard Plastics Machinery Division, and Standard Tool Division.

f.    <u>United Machinery Group</u>.  USM's Machinery Group included divisions known as the Machinery Division, Cutting Die Division, Medway Division, Turner Tanning Machine Division, Whitman Division, Hoague Sprague Division, and Krippendorf Kalculator Co.  On information and belief, Emhart Industries has succeeded to the liabilities of these USM divisions.

g.    <u>USM Special Products Group</u>.  USM maintained several sub-groups and divisions engaged in specialty manufacturing, such as Consumer Products, Gear Systems Division, Vibrac Corporation, Icon Corporation, Spiras Systems, Schaeffer Magnetics, Inc., and the Harmonic Drive Division.  On information and belief, Emhart Industries succeeded to the liabilities of these USM divisions.

h.    <u>USM Fastener Group</u>.  USM maintained a fastener manufacturing group, including the Molly Fastener Division, Nylok Fastener, and the Shelton, Warren, and Nylok Divisions.  On information and belief, Emhart Industries succeeded to the liabilities of these USM divisions.

- 5 -

i.     PCI Group, Inc.  On information and belief, PCI Group, Inc. was purchased by USM on January 29, 1982.  USM liquidated PCI Group, Inc. on January 31, 1985, and assumed its assets and liabilities.

j.     W. W. Cross Division.  On information and belief,  the W. W. Cross Division of USM owned and operated a facility in Jaffrey, New Hampshire, and was, at various times, a division of Emhart and PCI Group, Inc.

k.     MITE Corporation.  On information and belief, MITE Corporation merged with a wholly-owned subsidiary of Emhart in 1985, and the assets and liabilities of MITE were transferred to USM or its successor after September 1987.

l.     Various Black & Decker Divisions.  Black & Decker has engaged, through various divisions, in the manufacture and sale of electric tools, appliances, and other consumer products.

8.     On information and belief, each of the defendants is either licensed to do business, transacts business, and/or contracts to supply goods or services in the Commonwealth of Massachusetts.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 in that the plaintiff and defendants are citizens of different states and the amount in controversy, exclusive of costs and interest, exceeds the sum or value of $75,000.

- 6 -

10.    Liberty Mutual seeks, inter alia, a declaratory judgment pursuant to 28 U.S.C. §2201 of the respective rights and obligations of the parties under contracts of insurance issued by Liberty Mutual to the defendants and/or their current and/or former subsidiaries and/or divisions, with respect to the Beacon Heights site.  Actual controversies exist between the parties regarding their respective rights and obligations under the Liberty Mutual policies in connection with claims of environmental pollution allegedly asserted against defendants and/or their current and/or former subsidiaries and/or divisions.

11.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a).

## FACTS

### Policies

12.    At various times relevant hereto, Liberty Mutual issued certain insurance policies to USM (collectively, the "USM Policies").

13.    At various times relevant hereto, Liberty Mutual issued certain insurance policies to Farrel Company, also know as Farrel Corporation (collectively, the "Farrel Policies").

14.    Any liability coverage provided under the USM Policies and/or Farrel Policies (hereinafter collectively referred to as the "Policies") is defined in each policy and is subject to the terms, conditions, definitions, exclusions, and limits of liability contained in each such policy.

15.    Defendants have asserted or contended that Liberty Mutual is or may be obligated under the Policies to provide defendants with a defense against, and to indemnify defendants with respect to the claims and/or lawsuits described below.

## The Beacon Heights Site

16.    In May 1990 Defendants notified Liberty Mutual of the existence of claims concerning releases of hazardous waste at the Beacon Heights site, at which the Farrel Company and Farrel Company Division of USM allegedly disposed of wastes.

17.    On May 23, 1990, Liberty Mutual agreed to defend the matter under a specific reservation of rights, and Liberty Mutual provided a defense until June 12, 1991, when it informed Defendants that there is no coverage for the Beacon Heights site under the Policies.

18.    Liberty Mutual understands that there is a dispute as to the existence of coverage with respect to the Beacon Heights site under the Policies.

19.    Liberty Mutual believes that it has no obligation under the Policies to defend or to indemnify defendants with respect to the Beacon Heights site and any claims and/or lawsuits arising out of the Beacon Heights site (collectively referred to as the "Claims").

20.    Defendants have disputed Liberty Mutual's position with respect to any Claims arising out of the Beacon Heights site, and have asserted that defendants are entitled to a defense and indemnification of any such Claims.

- 8 -

Liberty Mutual reasserts its position with respect to the Claims arising out of the Beacon Heights site.

## COUNT I

### (Declaration of No Coverage Obligations)

21.    Liberty Mutual repeats, realleges and incorporates by reference herein the allegations of paragraphs 1 through 20 of its Complaint, as if fully set forth herein.

22.    An actual controversy exists between the parties concerning their respective rights, duties, status and/or obligations under and pursuant to the Policies with respect to the Claims arising out of the Beacon Heights site.

23.    Liberty Mutual is entitled to a declaration that:

    (a)    there is no coverage under any Liberty Mutual policy, including the Policies, for the Beacon Heights site and any Claims arising out of the Beacon Heights site;

    (b)    Liberty Mutual owes no duty to defend defendants with respect to the Beacon Heights site and any Claims arising out of the Beacon Heights site; and

    (c)    Liberty Mutual has no duty to indemnify defendants for any liabilities defendants may have with respect to the Beacon Heights site and any Claims arising out of the Beacon Heights site.

- 9 -

## COUNT II

### (Declaration of Set-Off of Defendants' Obligations)

24.    Liberty Mutual repeats, realleges and incorporates by reference herein the allegations of paragraphs 1 through 23 of its Complaint, as if fully set forth herein.

25.    In the event that defendants obtain a judgment against Liberty Mutual for damages with respect to the Beacon Heights site, then Liberty Mutual is entitled to, and should receive, a set-off or judgment reduction for those damages or costs which are the responsibility of the defendants or other parties.

26.    An actual controversy exists between defendants and Liberty Mutual concerning any set-off which will be due to Liberty Mutual should Liberty Mutual be found to owe damages to defendants for defense or indemnity with respect to the Beacon Heights site.

27.    Liberty Mutual is entitled to a declaration that, in the event that defendants obtain a judgment against Liberty Mutual for damages or declaratory relief relating to the Beacon Heights site, then Liberty Mutual is entitled to a set-off or judgment reduction for those damages and costs which are the responsibility of defendants or others, including, but not limited to, the damages and costs associated with the following:

(a)    the policies of other insurers who have settled with defendants;

(b)    the policies of other insurers who are not parties to this lawsuit;

(c)     the periods in which defendants purchased insurance which

contained exclusions for, or otherwise did not cover, the damage

at issue at the Beacon Heights site; and

(d)     the periods in which defendants were self-insured.

## COUNT III

### (Applicability of Certain Policy Terms)

28.     Liberty Mutual repeats, realleges and incorporates by reference herein

the allegations of paragraphs 1 through 27 of its Complaint, as if fully set forth

herein.

29.     Certain policies issued by Liberty Mutual to defendants, include,

without limitation, retrospective premium endorsements, non-cumulation of limits

provisions, and/or deemer provisions.  Liberty Mutual is entitled to a declaration

that to the extent that it is found to have a duty to defend and/or indemnify

defendants with respect to the Beacon Heights site or a Claim, these provisions of

the Policies, and any others which bear upon the amount of reimbursement owed

under a Policy, are to be applied in determining the amount of money to which

defendants may be entitled under any such Policy.

## PRAYERS FOR RELIEF

WHEREFORE, Liberty Mutual Insurance Company respectfully requests

that the Court:

1.    Declare that no coverage exists for any of the Claims or the Beacon Heights site described herein under any of the insurance policies issued by Liberty Mutual to defendants;

2.    Declare that Liberty Mutual owes no duty to defend defendants with respect to the Claims or the Beacon Heights site;

3.    Declare that Liberty Mutual owes no duty to indemnify defendants for any liabilities related to the Claims or the Beacon Heights site;

4.    Declare that to the extent that Liberty Mutual is found liable to pay any monies to defendants, then Liberty Mutual is entitled to a set-off or judgment reduction for those amounts of damages and costs that are the responsibility of defendants or others;

5.    Declare that to the extent that Liberty Mutual is found liable to pay any monies to defendants that any and all policy provisions which bear upon reimbursement, including, but not limited to, retrospective premium endorsements, non-cumulation of limits provisions, and/or deemer provisions contained in certain Policies be applied in determining the amount of money to which defendants are entitled under any such Policy with respect to the Claims and the Beacon Heights site;

6.    Award Liberty Mutual its costs and expenses, including attorneys' fees, associated with this action; and

- 12 -

7.    Grant Liberty Mutual such other and further relief as the Court deems

just and proper.

### JURY DEMAND

Liberty Mutual demands a trial by jury for all claims so triable.

LIBERTY MUTUAL INSURANCE COMPANY

By its attorneys,

_____

Ralph T. Lepore, III (BBO #294420)
Janice Kelley Rowan (BBO #265520)
Deborah E. Barnard (BBO #550654)
Robin L. Main (BBO #556074)
HOLLAND & KNIGHT LLP
10 St. James Avenue
Boston, MA  02116
(617) 523-2700

Dated:  April 2, 2004

### CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of April, 2004, I caused a copy of the foregoing document to be served by hand upon Jack R. Pirozzolo, Esq., counsel to defendants, at Willcox, Pirozzolo and McCarthy, P.C., 50 Federal Street, Boston, MA  02110 pursuant to the March 19, 2004 order of the Court in Civil Action No. 96-10804-DPW pending in the United States District Court for the District of Massachusetts which expressly states that the defendants shall accept service and that no summons need issue from the Court.

_____

Ralph T. Lepore, III

# 1819997_v1

- 13 -